

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

September 18, 2006

The Honorable Jeff Wentworth
Chair, Committee on Jurisprudence
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0459

Re: Whether a home-rule city is required to improve and maintain an unimproved, dedicated public right-of-way within the city limits so that the city may provide municipal services to adjacent property annexed by the city (RQ-0454-GA)

Dear Senator Wentworth:

You ask whether a home-rule city is required to improve and maintain an unimproved, dedicated public right-of-way within the city limits so that the city may provide municipal services to adjacent property annexed by the city.[1]

You inform us that in 2000, the City of Austin (the "City") approved a subdivision plat that included both property within the City limits and within the City's extraterritorial jurisdiction ("ETJ"). *See* Request Letter, *supra* note 1, at 1. The City required the developer to dedicate two public rights-of-way on the private land within the City so that adjacent tracts in the ETJ would have direct access to a public street. *See id.* But the City did not require the developer to improve the unpaved, caliche rights-of-way. *See id.* at 1–2. In 2001, the City annexed the adjacent property from the ETJ. *See id.* at 2. The City provides solid waste and electric utility services to the annexed area using the rights-of-way, "but residents fear that City fire, EMS and police personnel may not be able to adequately respond because one right of way is not a named street on the official city map and because the trucks and necessary equipment may be unable to traverse the unimproved road." *Id.* Finally, you note, "[t]he City has refused to accept the right of ways for operation and maintenance and will not make improvements despite the fact it already provides limited services to the annexed area." *Id.*

"Dedication" is the setting apart of private land for public use and may be effected statutorily or at common law. *Priolo v. City of Dallas*, 257 S.W.2d 947, 953 n.2 (Tex. Civ. App.—Dallas 1953, writ ref'd n.r.e) (citing *Poindexter v. Schaffner*, 162 S.W. 22, 23 (Tex. Civ. App.—Dallas 1913, no

---

[1]*See* Letter from Honorable Jeff Wentworth, Chair, Committee on Jurisprudence, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas (Feb. 16, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

writ)).  Statutory dedication of a street is controlled by the terms of the statute.  *See id.*  Chapter 212 of the Local Government Code, which regulates property development in and outside a city, governs dedication of streets.  *See generally* TEX. LOC. GOV'T CODE ANN. ch. 212 (Vernon 1999 & Supp. 2006); *see also Priolo*, 257 S.W.2d at 953–54 (suggesting that the statutory provisions are exclusive as to the elements of dedication they address).  In general, a landowner who divides a tract of land that is located within the limits of a city or within the extraterritorial jurisdiction of a city into two or more parts must prepare a plat to "lay out a subdivision . . . including . . . other lots, or to lay out streets, . . . or other parts of the tract intended to be dedicated to public use or for the use of purchasers or owners of lots fronting on or adjacent to the streets, alleys."  TEX. LOC. GOV'T CODE ANN. § 212.004(a) (Vernon 1999).  The plat must be "filed and recorded with the county clerk of the county in which the tract is located," and approved by the city.  *See id.* §§ 212.004(d), .005.

"Acceptance" of a dedicated street obligates a city to maintain and improve the street.  *Id.* § 212.048.  But a city's approval of a plat alone does not constitute such acceptance.  *See id.*; *see also Miller v. Elliott*, 94 S.W.3d 38, 45 (Tex. App.—Tyler 2002, pet. denied) ("Dedication is a mere offer and the filing does not constitute an acceptance of the dedication.").  Section 212.048 of the Local Government provides that:

> The approval of a development plat is not considered an acceptance of any proposed dedication for public use or use by persons other than the owner of the property covered by the plat and does not impose on the municipality any duty regarding maintenance or improvement of any purportedly dedicated parts until *the municipality's governing body makes an actual appropriation of the dedicated parts by formal acceptance, entry, use, or improvement.*

TEX. LOC. GOV'T CODE ANN. § 212.048 (Vernon 1999) (emphasis added); *see also City of Waco v. Fenter*, 132 S.W.2d 636, 637 (Tex. Civ. App.—Waco 1939, writ ref'd) ("In order to render a municipality liable for negligence in failing to keep a street . . . in repair, the evidence must show that such street . . . has been dedicated by the owner and accepted by the municipality as a public way.").  Thus under section 212.048, a city has no obligation to maintain or improve a dedicated street unless the city formally accepts, enters, uses, or improves the dedicated street.

Chapter 43 of the Local Government Code governs municipal annexation and requires a city to provide certain municipal services to an annexed area.  *See* TEX. LOC. GOV'T CODE ANN. ch. 43 (Vernon 1999 & Supp. 2006).  An annexing city must "complete a service plan that provides for the extension of full municipal services to the area to be annexed."  *Id.* § 43.056(a) (Vernon Supp. 2006); *see also id.* § 43.056(g) (delineating the level of services a city must provide depending on the level of services available in the annexed area before annexation).  The city must "provide the services by any of the methods by which it extends the services to any other area of the municipality."  *Id.* § 43.056(a).  And the "service plan must include a program under which the municipality will provide full municipal services in the annexed area" within specified time frames.  *Id.* § 43.056(b).  But if the city provides particular services listed in the statute within the city's corporate boundaries, it must provide those services to the annexed area on the effective date of the

annexation. *See id.* Under section 43.056(b), the listed services include police and fire protection, emergency medical services, and "operation and maintenance of roads and streets, including road and street lighting." *Id.* § 43.056(b)(1)–(3), (6). Additionally, under section 43.056(e) "[t]he service plan must . . . include a program under which the municipality will initiate after the effective date of the annexation the acquisition or construction of capital improvements necessary for providing municipal services adequate to serve the area." *Id.* § 43.056(e).

Section 43.056(b), which requires a city that "operates and maintains" roads and streets in its corporate boundaries to operate and maintain roads and streets in the annexed area, does not apply here because the rights-of-way at issue are not in the annexed area. *See* Request Letter, *supra* note 1, at 1; *see also RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 606–08 (Tex. 1985) (stating that to give effect to legislative intent, we must construe a statute according to its plain language). But section 43.056(e) plainly requires an annexing city to acquire or construct capital improvements necessary to provide municipal services to the annexed area and does not limit the location of the capital improvements to the annexed area. *See* TEX. LOC. GOV'T CODE ANN. § 43.056(e) (Vernon 1999); *see also RepublicBank Dallas, N.A.*, 691 S.W.2d at 606–08.

In sum, a city is required to (1) improve and maintain an unimproved dedicated public right-of-way within the city limits if the city has accepted the dedicated right-of-way; or (2) improve such right-of-way if the improvement is necessary to provide adequate municipal services to adjacent annexed property.

But whether in a particular instance the city has accepted the dedicated right-of-way is a question of fact rather than one of law. *See, e.g., City of Waco*, 132 S.W.2d at 638 ("Whether the city had recognized and used the alley as a public way was purely a question of fact and not one of law."); *Poindexter*, 162 S.W. at 24 (stating that "proof of acceptance was necessary" in the absence of formal city acceptance and "whatever evidence there may be of an implied acceptance, it is of such a nature as to raise an issue of fact in regard thereto"). We understand that the City has not formally accepted the dedicated rights-of-way or improved them. *See* Letter from Jacqueline Waters to Honorable Greg Abbott, Attorney General of Texas (Apr. 4, 2006) at 2 (on file with the Opinion Committee).[2] You state that the City has used the rights-of-way to provide solid waste disposal and utility services, *see* Request Letter, *supra* note 1, at 2, but such evidence simply raises an issue of fact regarding the city's acceptance. *See Poindexter*, 162 S.W. at 24; *see also Roberts v. Bailey*, 748 S.W.2d 577, 578 (Tex. App.—Beaumont 1988, no writ) (concluding that city had not accepted street that did not meet city's specifications and which the city had accepted only for drainage easement).[3] We cannot determine whether the city has, by use or entry, accepted the rights-of-way because this

---

[2]The City's Code of Ordinances prohibits accepting dedicated streets that are not "surfaced, curbed, and guttered with the required utilities and drainage facilities installed." THE CODE OF THE CITY OF AUSTIN, TEXAS, TITLE 25. LAND DEVELOPMENT § 25-4-38(D) (2006), *available at* http://www.amlegal.com/austin_tx/ (last visited Sept. 5, 2006). The Code also provides that "[t]he City may accept an offered dedication only by the action of an authorized official" and that "[e]xcept as provided in a fiscal security agreement [provided by the developer], an officer or employee of the City may not enter, use, or improve a street unless the street has been accepted by the City." *Id.* § 25-4-38(B), (E).

[3]*See also id.*

office does not resolve questions of fact. *See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0139 (2004) at 5 (stating that attorney general opinion will not answer whether county has declared a private street to be a public street, which is a question of fact); GA-0003 (2002) at 1 (stating that the opinion process does not determine questions of fact).

Similarly, whether the improvement and maintenance of the rights-of-way are necessary to provide adequate municipal services to the annexed area is an unresolved question of fact. You inform us that the annexed area residents are concerned that City fire, police, and emergency medical services *may* not be able to adequately respond and the necessary vehicles and equipment *may* not be able to use the unpaved rights-of-way. *See* Request Letter, *supra* note 1, at 2. The City, however, asserts that improvement of the rights-of-way is not necessary to provide City services, and the City is providing comparable services to the annexed area.[4] The inability of fire, police, and emergency medical services to adequately respond because of the existing condition of the rights-of-way and the absence of another access street or road to the annexed property are disputed questions of fact that we cannot resolve in the opinion process. *See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0139 (2004) at 5, GA-0003 (2002) at 1.

---

[4]*See* Letter from David Alan Smith, City Attorney, City of Austin, to Honorable Greg Abbott, Attorney General of Texas at 1–3 (Apr. 21, 2006) (on file with the Opinion Committee).

## S U M M A R Y

A city is required to (1) improve and maintain an unimproved, dedicated public right-of-way within the city limits if the city has accepted the dedicated right-of-way; or (2) improve such right-of-way if the improvement is necessary to provide adequate municipal services to adjacent annexed property. Whether a city has accepted the dedicated rights-of-way or whether the improvement is necessary to provide adequate municipal services to the annexed property are questions of fact that cannot be resolved in an attorney general opinion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee